RUCKER *v.* TABOR.

If an owner of land entered into a contract with another, by which the
latter was to take possession of the land, place hands upon it, and have
it cultivated on certain agreed terms, involving mutual obligations as to
furnishing stock, feed for them, etc., and under which the landowner
should receive, by being applied to his use (after certain deductions),
one half of the crop raised; and if, after taking possession, such person
removed the hands from the land and abandoned it, and thereupon, with-
out notice to him of an intention to do so or to hold him liable, the
owner rented a portion of it to others, placed them in possession, and
received rents from them, this amounted to a surrender and acceptance;
and under such facts, in a suit by the landowner against such other
person, a nonsuit was properly granted.

Submitted July 18,—Decided December 13, 1906.

Breach of contract. Before Judge Holden. Elbert superior
court. September 13, 1905.

The evidence for the plaintiff showed as follows: He owed a
debt to a firm of which the defendant was a member. He agreed
with the defendant that the latter should cultivate certain lands
of the plaintiff, each to receive half of the crops, advances made by
the defendant for the plaintiff being deducted from the plaintiff's
share. The plaintiff was to furnish the land and houses for the
hands. Plaintiff's share was to be applied to his indebtedness to
the firm. Defendant put certain hands on the place and com-
menced work, but afterwards moved them away and abandoned
the land. When asked about it, he said he did not "see any money
in it for him." Plaintiff placed tenants on part of the land de-
fendant had rented, and received rent from them for the year.

The court granted a nonsuit and the plaintiff excepted.

*Z. B. Rogers,* for plaintiff.

*VanDuzer & Tutt,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) If one
party to a continuing contract containing mutual obligations re-
nounces it, the other can immediately treat such renunciation as a
breach of the contract, and sue for the damages he has sustained,
or treat it as binding and wait until the time arrives for its per-
formance, in order to give the party who has repudiated the con-
tract an opportunity to comply with its terms. "If, after the at-
tempted renunciation by one party to the contract, the other elects

to treat the contract as still binding and await the time for full performance, it is incumbent upon the party making such election to perform such of the obligations as may in the meantime devolve upon him under the terms of the contract." *Smith* v. *Georgia Loan Co.,* 113 *Ga.* 975. The former course was not sought to be pursued here. The plaintiff waited till long after the contract should have been complied with.

Counsel for both parties, in their briefs, treated the contract as one of rental by the defendant. So treating it, the controlling point in the case is, did the facts constitute a surrender and acceptance in law? According to the evidence for the plaintiff, the defendant after taking possession abandoned the property to be cultivated under the contract, and said that he did not "see any money in it for him." Plaintiff did not refuse to receive the property, or notify the defendant that he would hold him liable, but took possession of at least a part of it and relet it, or had it cultivated on shares. This in law amounted to a surrender, and terminated the relation of landlord and tenant. "The general rule is that a reletting by the landlord without the consent of the tenant is a resumption of complete possession, and operates as a surrender by operation of law." 18 Am. & Eng. Enc. L. (2d ed.) 365, 366. In 2 McAdam on Landlord & Tenant (3d ed.), 1270, it is said: "A surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them." On page 1285-6, it is said: "If a landlord relets the premises, without notice to the tenant that it is on his account, it dispenses with a formal surrender on the part of the tenant." Such a surrender does not release rent or obligations already matured, but does release the tenant from further rent. *Harris* v. *Dub,* 57 *Ga.* 77; *Ledsinger* v. *Burke,* 113 *Ga.* 74, s. c., 115 *Ga.* 195; Walls *v.* Atcheson, 11 E. C. L. (3 Bing.) 228; Schuisler *v.* Donnell & Ames, 16 Ala. 73, 50 Am. Dec. 168; Rice *v.* Dudley, 65 Ala. 68; Tully *v.* Dunn, 42 Ala. 262 (when the tenant failed to take possession at all). Some of the courts hold that if a tenant abandons the property, and the landlord notifies him of a refusal to accept, but that he intends to hold the tenant liable, and rents to another to lessen damages, the tenant is not released, but is liable for the difference in the rents under his contract and

under the rerenting, or for loss necessarily arising.　Auer v. State, 99 Penn. St. 370, 44 Am. R. 114.　Others deny this, unless the tenant expressly or impliedly consents to the rerenting on his account.　Welcome v. Hess, 90 Cal. 507, 25 Am. St. Rep. 145; Underhill v. Collins, 132 N. Y. 269; Gray v. Káufman Dairy Co., 9 App. Div. (N. Y.) 115.　The plaintiff, however, does not bring himself under either rule.　Whatever name may be applied to the exact relation created by this contract between the parties, it is covered, in principle, by the foregoing rules of law; and there was no error in granting a nonsuit.　Under this view, the ruling admitting certain evidence becomes immaterial.

<div align="center">

*Judgment affirmed.　All the Justices concur.*