CRYSTAL SPRINGS DISTILLERY Co. *v.* Cox, Collector of Internal Revenue.

(*Circuit Court, D. Kentucky.* October 6, 1891.)

INTERNAL REVENUE—DISTILLED SPIRITS—LOSS IN BOND—ABATEMENT OF TAX.

Act Cong. May 28, 1880, § 17, provides for an allowance for the loss of distilled spirits deposited in a bonded warehouse, not to exceed a fixed amount for given periods. Section 4 provides that when it shall appear that there has been a loss of such spirits, other than that provided for by Rev. St. U. S. § 3221, as amended, which in the opinion of the commissioner of internal revenue is excessive, he may require the collector to instruct the withdrawal of such spirits, and to collect the tax accrued on the quantity originally deposited in the warehouse, though the time specified in the bond given for the withdrawal of the spirits has not expired. Rev. St. § 3221, provides for the abatement of the tax accruing on distilled spirits actually destroyed "by accidental fire or other casualty," while the same were in a bonded warehouse. *Held,* that the term "casualty," as used in this section, does not include the warping of barrels from unusual and excessive summer heat, abnormal evaporation caused by such heat, or the existence of undiscovered wormholes in the barrels; and, where a loss has occurred from these causes which the commissioner regards as excessive, he may order the withdrawal of the balance, and payment of the tax on the whole, as provided by the act of May 28, 1880.

At Law. On demurrer to the petition.

*Walter Evans,* for plaintiff.

*Geo. W. Jolly,* U. S. Atty., for defendant.

BARR, J. The plaintiff has sued the defendant, who was formerly collector of internal revenue for this district, for $571.50, which it claims was illegally collected by him in 1888 as a tax on the outage from 108 packages of whisky, which had been warehoused by it under and according to the internal revenue law. The petition has been demurred to because the facts do not constitute a cause of action against the defendant. It appears from the allegations of the petition that the plaintiff was a distiller, and that it deposited in a bonded warehouse 108 packages of whisky, containing, by the original gauge, 4,936 taxable gallons of whisky. This was deposited, commencing January 1, 1886, and continuing during 1886, and until May 1, 1887, and the usual bond given for the tax. In June, 1888, the commissioner of internal revenue instructed the defendant, Cox, who was then and during the year 1888 the collector of internal revenue for this district, to require of the plaintiff the immediate withdrawal of said whisky from the warehouse, and the payment of the tax of 90 cents for each gallon of same as ascertained by the original gauge when deposited, without making allowance for losses which may have occurred while in the warehouse. And that subsequently the commissioner of internal revenue assessed as of the 1st of July, 1888, against plaintiff the full tax of 90 cents per gallon upon all of said spirits as originally gauged, which tax was collected by defendant, and paid by plaintiff under protest in November, 1888. This whisky was regauged in September, 1888, when it was ascertained these 108 packages of whisky had lost 635 gallons, and the tax paid thereon to defendant was $571.50. The petition alleges this tax was illegal and

void, and the demurrer seeks to raise this question, and whether this suit can be maintained against the defendant even if the tax was illegal. Prior to the resolution of congress of March, 1878, distilled spirits which were deposited in a bonded warehouse could only remain for one year after entry, and when withdrawn tax was paid on quantity deposited, without allowance for loss from leakage or other cause. This time was extended by resolution of congress of March 28, 1878, to three years instead of one year, but the tax was still to be paid on the quantity of spirits originally deposited. This continued to be the law until May 28, 1880, when congress, in the seventeenth section of an act of that date, provided for an allowance for the loss of distilled spirits deposited in bonded warehouses not to exceed one proof gallon for two months for the time the spirits remained, and for loss for various periods to three years, and for loss up to seven and a half gallons. This loss was to be ascertained upon a regauge made upon demand of the owner of the spirits, but the allowance for loss was in no event to exceed the limit given by the statute, and only then, when the loss was without the fault or negligence of the distiller or owner of the spirits.

In the fourth section of this act of May 28, 1880, it is enacted:

"If it shall appear at any time that there has been a loss of distilled spirits from any cask or other package hereafter deposited in a distillery warehouse, other than the loss provided for in section thirty-two hundred and twenty-one (3221) of the Revised Statutes of the United States, as amended, which in the opinion of the commissioner of internal revenue is excessive, he may instruct the collector of the district in which the loss has occurred to require the withdrawal from the warehouse of such distilled spirits, and to collect the tax accrued upon the original quantity of distilled spirits entered into the warehouse in such cask or package, notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired. If the said tax is not paid on demand, the collector shall report the amount due upon his next monthly list, and it shall be assessed and collected as other taxes are assessed and collected. That the tax on all distilled spirits hereafter entered for deposit in distillery warehouses shall be due and payable before and at the time the same are withdrawn therefrom, and within three years from the date of the entry for deposit therein. And warehousing bonds thereafter taken * * * shall be conditioned for the payment of the tax on the spirits as specified in the entry, before removal from the distillery warehouse, and within three (3) years from the date of said bonds."

The tax on the distilled spirits attached as soon as it was distilled, (section 3248, Rev. St.,) and clearly the plaintiff was liable for the tax on the entire quantity warehoused, unless an allowance was made for loss under the seventeenth section of the act of May 28, 1880; and it is equally clear that the commissioner of internal revenue was authorized to direct the withdrawal of the spirits from the warehouse if, in his opinion, the loss of spirits from the packages was excessive, unless the loss was provided for by section 3221, Id. That section provides that—

"The secretary of the treasury, upon the production to him of satisfactory proof of the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof, of any distilled

spirits while the same remained in the custody of any officer of internal revenue in any distillery warehouse or bonded warehouse of the United States, and before the tax thereon has been paid, may abate the amount of internal taxes accruing thereon, and may cancel any warehouse bond, or enter satisfaction thereon, in whole or in part, as the case may be."

The plaintiff's allegations are intended to deny the authority of the commissioner of internal revenue to direct the immediate withdrawal of this whisky, because the excessive loss upon which it was based was from causes covered by section 3221 of the Revised Statutes. The allegations are that—

"Plaintiff avers that the said instructions to said defendant as such collector, to require the withdrawal of said packages of spirits from the said warehouse, were based by said commissioner of internal revenue upon alleged excessive loss of spirits from said packages while in said warehouse; but the plaintiff states that the said instructions of the said commissioner of internal revenue and the said assessment of said taxes were illegal and void. Plaintiff states it to be the fact that while the said losses from each and every one of said packages had been excessive when said instructions were given, yet said losses occurred by the destruction of all of said spirits so lost by accidental casualties, viz., from warpage and injury to the barrels containing said spirits, caused by excessive and unusual heat in the summer of 1887, from abnormal evaporation from said packages caused by said heat, and from undiscovered worm-holes in the barrels containing said spirits, all without any fraud, collusion, or negligence of the plaintiff, who was the owner of all of said spirits; and because of said fact the said commissioner of internal revenue was without power or authority lawfully to give the said instructions or to make the assessment for said taxes before the expiration of three (3) years from the time of the deposit of said spirits, respectively, in said warehouse."

These allegations must be taken as true, and the question is whether an excessive loss thus caused authorized the commissioner of internal revenue to order an immediate withdrawal of the spirits from the warehouse. The loss provided for by section 3221 is that of "actual destruction by accidental fire or other casualty." These allegations do not make out a case of destruction by casualty other than an accidental fire. "Casualty," as used here, means an accident; an event not to be foreseen or guarded against. Excessive and unusual summer heat is not a casualty, neither are undiscovered worm-holes in whisky barrels a casualty, within the meaning of this section. The provision of the act of 1880, which allowed distilled spirits to remain in warehouses, at the option of the distiller or owner, not exceeding three years, and entitled herein to an allowance of not exceeding seven and a half gallons for the three years, and proportionately less for a shorter period, was accompanied by the other provisions allowing the commissioner of internal revenue to order it out of bonded warehouse at any time when in his opinion the loss was excessive; and the two provisions should be construed together, and so that effect should be given to each. The distilled spirits, when deposited, were subject to the payment of the tax, and both the possession and a statutory lien were retained by the United States; hence, if this security for the tax was lessening unreasonably by excessive loss, the authority to declare the tax due was retained by the government, to be

exercised by the commissioner of internal revenue. If, however, the spirits were actually destroyed by accidental fire or other casualty, the commissioner of internal revenue could not order the spirits remaining in the packages withdrawn, because, as to the destroyed spirits, the treasurer of the United States had already the authority to remit the tax, and would likely do so; hence the security for the tax was not perceptibly diminished by such a loss. It will be observed that the excessive loss which authorized the commissioner to order the withdrawal and assessment of the tax must be in each package ordered to be withdrawn. This view is decisive of the demurrer, and we need not consider whether, if the acts of the commissioner of internal revenue in ordering the withdrawal of these packages and in assessing the tax were illegal, the defendant would be personally liable because he collected the tax. See *Harding* v. *Woodcock*, 137 U. S. 43, 11 Sup. Ct. Rep. 6. The demurrer should be sustained, and it is so ordered.