## 20180.   OAKLAND MOTOR CAR COMPANY *v.* RIPPEY MOTOR COMPANY.

Decided September 8, 1930.

*McDaniel, Neely & Marshall,* for plaintiff.

*Alston, Alston, Foster & Moise, William Hart Sibley,* for defendant.

JENKINS, P. J.   This was a suit by the Overland Motor Car Company as landlord against Rippey Motor Company, for rent of a certain building in the City of Atlanta.   No dispute is shown by the record as to the amount due for rent.   The defendant set up that during the period of the lease a very heavy windstorm prevailed

in that part of Atlanta in which the rented premises are located; that the wind reached "an unusual, severe, and dangerous velocity, on account·of which all or nearly all of the plate-glass windows in said leased premises were blown out;" that the plate-glass windows were replaced by the defendant at a stated cost, and demand upon the plaintiff for reimbursement had been made and refused. It was further alleged that the plaintiff agreed that the defendant might replace the broken windows, and that the question of plaintiff's liability therefor should be thereafter settled. Upon the trial a stipulation of facts was entered upon, and other evidence offered by the defendant, under which the allegations of the plea were proved substantially as laid. There is no dispute as to the amount due the plaintiff for rent, or as to the amount of the expense incurred by the defendant in replacing the windows. The court directed a verdict for the plaintiff in an amount represented by the difference between the amount due for rent and the amount expended by the defendant in replacing the broken glass. To this judgment exception is taken by the plaintiff; and, as is stated by counsel for both sides, the question to be determined is governed by the construction to be placed upon the following language contained in the lease contract: "The lessee shall pay the rent at the times and in the manner aforesaid, and shall keep the premises in as good order and condition as when delivered to it, except the lessee shall not be required to make repairs to the roof nor exterior or structural repairs, nor to repair damage by fire or other casualty. The lessor shall forthwith replace all glass in said premises broken or damaged before possession is given the lessee hereunder. The lessee shall replace all glass in said premises broken or damaged during said term, with glass of equal character, and at the expiration of the term the lessee will remove its goods and effects, and will peaceably yield up to the lessor the said premises in as good order and repair as when delivered to it, damage by fire, casualty, war or insurrection, riot or public disorder, or act on the part of any governmental authority, ordinary wear and tear and damage by elements, excepted."

The cardinal rule of construction of contracts is to ascertain the intention of the parties. And when that intention is ascertained, if it contravenes no rule of law, it is to be enforced. Civil Code (1910), § 4266. Contracts are to be construed as a whole, and in

light of the law and the circumstances. Under the law of Georgia, it is the duty of the landlord to keep the premises in repair, and he is liable for all substantial improvements placed upon them by his consent. Civil Code (1910), § 3699. "The destruction of the tenement by fire, or the loss of possession by any casualty not caused by the landlord, or from defect of his title, shall not abate the rent contracted to be paid." Civil Code (1910), § 3711. In such case the landlord loses the building, and the tenant loses the rent. *White* v. *Molyneux*, 2 *Ga.* 124, 127. But this section imposes upon the tenant no obligation to replace a building or any portion thereof destroyed by fire, unless he has contracted to do so. A casualty has been defined as "unforseen circumstances not to be guarded against by human agency, and in which man takes no part" (1 Bouvier's Law Dictionary, 430) ; as "an unforeseen accident; a misfortune" (1 Words & Phrases, 2d series, 590; Gill *v.* Fugate, 117 Ky. 257, 78 S. W. 188) ; as an "event not to be foreseen or guarded against." Crystal Springs Distillery *v.* Cox, 47 Fed. 693, 695. In *Lennard* v. *Boynton,* 11 *Ga.* 109, it was held that the death of a rented slave was a casualty within the meaning of the code section cited, and did not relieve the lessee of the slave from the payment of the rent. In *Clark* v. *McCroskey,* 41 *Ga.* 137, the Supreme Court held that the destruction of a leased building by the Federal army did not relieve the lessee from liability for rent, although the "scaling ordinance" of 1865 was applied to the rent reserved, which was payable in Confederate currency. In *Mayer* v. *Morehead,* 106 *Ga.* 434, 436 (32 S. E. 349), the Supreme Court intimated that a windstorm such as happened in the instant case is to be regarded as a casualty within the meaning of the code section cited.

Counsel for plaintiff in error insist that the windstorm was an "act of God," and not to be regarded as a casualty within the meaning of the lease contract. They cite United States *v.* Northern Pacific R. Co., 215 Fed. 64; Forsdick *v.* Board of Supervisors (Miss.), 25 So. 294; Crystal Springs *v.* Cox, supra. In the first case, the suit was instituted by the government to recover a penalty prescribed by law against a railroad company requiring employees to remain on duty for a longer period than sixteen consecutive hours. The railroad defended on the ground that the infraction was occasioned by a derailment, and that there should be no

liability under the provision of the act that it should not apply "in any case of casualty or unavoidable accident or the act of God." The court held that the derailment was a casualty within the meaning of the act; but there was no intimation that an act of God is not likewise to be regarded as a casualty. In the Forsdick case, the issue was as to a claimed reduction in a tax assessment; and the court held that deterioration in the value of land caused by the *usual* overflow of the Mississippi river did not constitute a casualty within the meaning of the Mississippi statute authorizing a reduction of an assessment for taxation for such cause. In that case the court intimated that had the deterioration resulted from an *unusual* overflow of the river, the rule might be otherwise. In the Crystal Springs case, a distillery claimed that the loss of whisky by reason of evaporation and the warping of barrels from excessive and unusual summer heat constituted a casualty. The court held otherwise, laying down the rule that a casualty within the meaning of the Federal law upon the subject meant "an accident; an event not to be foreseen or guarded against." None of the cases cited by counsel, or which have been examined, indicate that a violent windstorm of unusual nature, such as might not reasonably be foreseen or guarded against, resulting in damage, should not be deemed a casualty; and it seems clear that the damage to the plate-glass windows of the building leased in the instant case resulted from a casualty within the meaning of the contract. But it is contended the contract itself provided that the lessee should "replace all glass in said premises broken or damaged during the term, with glass of equal character." This particular clause, standing alone, would impose upon the lessee the duty of replacing plate-glass broken in the ordinary use of the building from risks ordinarily incident to a material of that character; but when construed in connection with the remainder of the sentence of which it is a part, we do not think it has the effect of requiring the restoration of glass broken by reason of extraordinary causes amounting to a casualty. The court did not err in finding in favor of the defendant on this question.

*Judgment affirmed. Stephens and Bell, JJ., concur.*